# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00307-CV

---

**Steven Benedict and Rayma Benedict, Appellants**

**v.**

**Tonya Hill and Charles Edward Hill, Jr., Appellees**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. 23-1108, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellants Steven and Rayma Benedict are the maternal grandparents of S.G.H. (Sadie)[1] and the stepfather and mother, respectively, of appellee Tonya Hill, Sadie's mother. The Benedicts filed a suit affecting the parent-child relationship (SAPCR) seeking conservatorship of Sadie and seeking to limit Tonya's and appellee Charles Edward Hill, Jr.'s[2] parental rights and periods of possession. The trial court dismissed the Benedicts' suit for lack of standing. The Benedicts argue that the case should be reinstated, as Rayma has standing to seek conservatorship under both Sections 102.003(a)(9) and 102.004(a)(1) of the Family Code and Steven has standing under Section 102.003(a)(9). We affirm in part and reverse and remand in part.

---

[1] To protect the child's privacy, we refer to her using a pseudonym. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

[2] Charles is Sadie's father.

# I. BACKGROUND[3]

On March 18, 2020, a district court in Bell County signed Tonya and Charles's final decree of divorce and entered custody and support orders concerning Sadie. Tonya and Charles were appointed as joint managing conservators, with Tonya granted the right to designate Sadie's primary residence. On January 26, 2022, the Benedicts filed a suit to modify the parent-child relationship, claiming standing under Sections 102.003(a)(9) and 102.004 of the Family Code.[4] The Benedicts attached an affidavit to the petition, in which Rayma averred that she and her husband "have had exclusive control of [their] granddaughter . . . for a period of approximately five months, and have had material past substantial contacts with multiple periods of exclusive control for periods [of] up to six months or more spanning the life of [their] granddaughter not interrupted by 90 days since at least March of 2020."

The Benedicts' live pleading alleged that Tonya and Charles had both engaged in family violence and that Tonya had "a history or pattern of child neglect." The Benedicts requested that they be appointed as Sadie's sole managing conservators or her joint managing conservators along with Charles, and that Tonya be appointed as a possessory conservator. The Benedicts also requested that Charles and Tonya have no "access to the child," or, alternatively, that their periods of possession be continuously supervised, and that Charles and Tonya attend

---

[3] In addition to the evidence detailed below, evidence was also adduced about the parenting abilities of Tonya and Charles and whether the Benedicts had engaged in parental alienation. Because those facts are not necessary to the resolution of this appeal and because the parties are familiar with those facts, we do not detail them here. *See* Tex. R. App. P. 47.1.

[4] The Benedicts also claimed standing below pursuant to Section 102.003(a)(11) of the Family Code, but they have not raised this claim on appeal. Section 102.003(a)(11) pertains to parties who have possession of the child by virtue of placement by the Department of Family and Protective Services. There is no evidence that the Department ever placed Sadie with the Benedicts.

therapy, be drug-tested, and complete battering intervention programs, an anger management course, and a psychological evaluation. Tonya filed a plea to the jurisdiction, asserting that the Benedicts lacked standing to bring their suit.

On May 4, 2023, the Bell County district court signed temporary orders appointing the Benedicts, Tonya, and Charles as joint managing conservators, allowing Tonya and Charles to have supervised visitation with Sadie, and ordering a parental alienation assessment. That same day, the court signed an order transferring the matter to Hays County. As the proceedings continued in Hays County, Tonya requested a hearing on her plea to the jurisdiction. At this hearing, Rayma, Charles, and Tonya's boyfriend, Mike Stepchinski, testified.

Rayma testified that she had exercised parentlike care over Sadie "[p]robably since birth." According to Rayma, Charles, Tonya, and Sadie moved into her home "in early 2012" when Sadie was an infant. Sadie's crib was in Rayma and Steven's bedroom, and Rayma testified that she cared for Sadie during the night. Rayma explained that by 2013, a guesthouse had been built on their property into which Charles, Tonya, and Sadie moved. However, Rayma testified that she still provided substantial care for Sadie. For instance, Rayma explained that when Sadie was two years old, Rayma was responsible for bathing Sadie "probably a good 75, 80 percent of the time" and that she "always" provided food, clothing, and shelter for her. Rayma testified that in 2015, there were "a good seven weeks" where Sadie was staying in her home full-time after Tonya underwent surgery.

Rayma testified that in 2020, after Tonya suffered a seizure, Sadie stayed with them continuously for the three or four days that Tonya was in the hospital, an extended period of time when Tonya was in rehabilitation and inpatient treatment, and the four to six weeks that

Tonya moved back to the guesthouse but was recuperating, for a total of "four to six months." Rayma testified that Charles agreed Sadie could stay with them during this period, and Charles acknowledged that he picked Sadie up from the Benedicts' residence during this period. Rayma explained that when Sadie was living with them during the summer, she and Sadie would "[g]o to the Y to swim," visit the creek "and do nature walks," and go out to eat together. Rayma explained that both she and Steven homeschooled Sadie during this period. Rayma also testified that, during this time, she took Sadie to certain doctor's appointments.

Rayma testified that Sadie was living in her home "part-time" in July and August 2021, and then full-time from September 2021 through the Benedicts filing suit in January 2022. Stepchinski testified that this period of possession did not begin until early November 2021. However, Charles testified that he "thought [Sadie] resided both places," meaning Tonya's guesthouse and the Benedicts' home, throughout 2021.

Rayma explained that prior to filing the lawsuit, she would take her granddaughter "horseback riding," help Sadie with her "swim team" obligations, and take Sadie and her friends to go "tubing down the river" and visit "Kalahari in Round Rock." According to Rayma, she had provided financially for Sadie for Sadie's entire life. She paid for Sadie's groceries, her health insurance, co-pays for doctors' appointments, speech and equine therapy, and she and Steven had covered the vast majority of all of Sadie's expenses. Rayma also testified that she accompanied Sadie to her speech and equine therapy appointments, helped enroll her in school when she was younger, and spoke with Sadie's school counselor when a safety issue arose. However, Rayma acknowledged that Tonya "primarily" took Sadie to the doctor and was responsible for enrolling Sadie in school. Nevertheless, Rayma believed that she was more of a parent-like figure in Sadie's life, rather than a grandparent.

4

The trial court made the following relevant findings and conclusions:

- Steven Benedict is not a biological grandparent of Sadie nor is he related to her within the third degree of consanguinity;

- The Benedicts failed to provide an affidavit with the petition averring that denying them possession of or access to Sadie would significantly impair her physical health or emotional well-being, as required by Section 153.432(c) of the Family Code;

- The final divorce decree appointed Tonya and Charles as joint managing conservators and did not find that their possession of or access to Sadie would significantly impair her physical or emotional well-being;

- In 2021, Sadie did not share a principal residence with the Benedicts until no earlier than September of that year, and the facts "were disputed" as to whether that period of residence began in September or November;

- The Benedicts "periods of possession of [Sadie] were temporary in nature and not fixed or permanent and w[ere] dependent on the consent of" Tonya and Charles;

- There was no evidence presented that Tonya and Charles abdicated their parental duties and responsibilities during the relevant time period;

- There was no evidence presented that Tonya and Charles did not care and provide for Sadie during the relevant time period;

- The Benedicts did not have actual care, custody, and possession of Sadie "for not less than six (6) months preceding the filing of their petition to modify";

- The Benedicts' evidence of "purchasing items for [Sadie], participating in health care appointments, driving [Sadie] to school, picking up [Sadie] from school, etc. was not sufficient to establish [the Benedicts'] exercised actual parental care and control over [Sadie]";

- The Benedicts did not prove that they shared a principal residence with Sadie during the statutorily-required time period;

- The Benedicts did not overcome the fit-parent presumption; and

- The Benedicts lacked standing.

The trial court dismissed the Benedicts' petition for lack of standing, and this appeal followed.

## II.   STANDING

The Benedicts assert that both Rayma and Steven have standing pursuant to Section 102.003(a)(9) of the Family Code and that Rayma also enjoys standing pursuant to Section 102.004(a)(1) of the Family Code. The Benedicts also challenge the trial court's dismissal of their case for failing to file an affidavit that complies with Section 153.432 of the Family Code.

### A.   Standard of Review & Applicable Law

At the time the Benedicts filed suit, Section 102.003(a)(9) of the Family Code provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" has standing to bring a SAPCR. Act of May 13, 2019, 86th Leg., R.S., ch. 130, § 2, sec. 102.003, 2019 Tex. Gen. Laws 220, 221 (amended 2025) (current version at Tex. Fam. Code § 102.003(a)(9)). "Standing, like other issues implicating a court's subject matter jurisdiction, is a question of law that we review de novo." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). "Here, because the Texas Family Code provides a comprehensive statutory

6

framework for standing in SAPCRs, '[t]he party seeking relief must allege and establish standing within the parameters of the language used in the statute.'" *Udall v. Minns*, 730 S.W.3d 704, 721 (Tex. App.—Austin 2026, pet. denied) (quoting *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied)). "In evaluating standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d at 155.

The Benedicts assert that the applicable standard of review requires us to "take as true all evidence favorable to the nonmovant." *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). This is true when our jurisdictional inquiry is intertwined with the merits of the case. *See id.* But when the jurisdictional inquiry and merits of the case are separate, we defer to the trial court's unchallenged findings if they are supported by some evidence. *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.).

The supreme court has implicitly held that the standing inquiry under Section 102.003(a)(9) does not implicate the merits of the underlying proceeding and has acknowledged that it is appropriate to defer to the trial court's resolution of fact issues in this context. *See In re H.S.*, 550 S.W.3d at 155; *see also id.* at 165 (Guzman, J., dissenting) ("The contention that we must view the evidence here in the light most favorable to standing rather than in the light most favorable to the trial court's fact findings reflects a misunderstanding of *Miranda*, which involved a jurisdictional issue intertwined with the merits of the case."); *Reyes v. Lott*, No. 14-20-00105-CV, 2022 WL 248122, at *3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2022, no pet.) (mem. op.) ("The *H.S.* court implicitly, if not explicitly, held that jurisdictional issues and facts under section 102.003(a)(9) did not implicate the merits.").

7

Thus, we will defer to the trial court's unchallenged findings of fact as they pertain to the Benedicts' standing under Section 102.003(a)(9). *See In re H.S.*, 550 S.W.3d at 155. However, these findings may still be challenged on legal- and factual-sufficiency grounds. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Udall*, 730 S.W.3d at 720–21. And, of course, we review the trial court's legal conclusions and its application of the law to its fact findings de novo. *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001).

## A.    Section 102.003(a)(9)[5]

This brings us to whether the Benedicts had standing to bring a SAPCR under Section 102.003(a)(9) at the time they filed suit. The Benedicts' live pleading adequately alleged that they had standing pursuant to this section. Thus, we review whether the jurisdictional evidence sufficiently established their standing under this section. *See In re H.S.*, 550 S.W.3d at 155. Section 102.003(a)(9) "recognizes that a narrow class of nonparents, who have served in a parent-like role to a child over an extended period of time, may come to court and seek to preserve that relationship, over a parent's objections." *Id.* at 163. However, Section 102.003(a)(9) excludes from its parameters "nonparents who do not share a principal residence with a child for the statutory time period, 'regardless of how extensively they participate in

---

[5] In 2025, the Legislature amended Section 102.003(a)(9). *See* Act of May 21, 2025, 89th Leg. R.S., ch. 402, § 1, sec. 102.003, 2025 Tex. Sess. Law Serv. ----, ----. The statute no longer allows "relative[s]" of the child to assert standing under its provisions and requires a non-parent caregiver to have had "exclusive" rather than actual control over the child. Tex. Fam. Code § 102.003(a)(9); *cf. In re H.S.*, 550 S.W.3d 151, 158 (Tex. 2018) (concluding that because "the Legislature [did not] require the nonparent's care and control of the child to be exclusive" in former Section 102.003(a)(9), court of appeals erred "[b]y conditioning nonparent standing on a finding that the parents have wholly 'abdicated' their parental rights to the nonparent"). The changes to Section 102.003(a)(9) only apply to SAPCRs filed on or after September 1, 2025, and therefore do not impact our decision in this case. *See* Act of May 21, 2025, 89th Leg. R.S., ch. 402, § 7, 2025 Tex. Sess. Law Serv. ----, ----.

caring for [the child].'"  *In re Torres*, 614 S.W.3d 798, 802 (Tex. App.—Waco 2020, orig. proceeding) (quoting *In re H.S.*, 550 S.W.3d at 156); *In re S.W.*, No. 02-21-00409-CV, 2022 WL 325385, at *5 (Tex. App.—Fort Worth Feb. 3, 2022, no pet.) (mem. op.).  Thus, we will begin by determining whether Sadie shared a principal place of residence with the Benedicts for the requisite six-month period ending not earlier than ninety days from the date they filed their petition, January 22, 2022.

The trial court found that "[d]uring 2021, until no earlier than September of that year, [Sadie] did not share a principal residence with" the Benedicts.  Though the trial court noted that "[t]he facts were disputed" as to when Sadie began residing with the Benedicts in 2021, the trial court did not detail which version of the facts it credited.  Based on our deferential review, we will presume that the trial court implicitly found that Sadie did not begin residing with the Benedicts until early November 2021.  *See In re R.I.*, 610 S.W.3d 581, 590 (Tex. App.—Tyler 2020, no pet.).

The other period of possession relevant here occurred after Tonya suffered a seizure in 2020.  According to Rayma, Tonya was in the hospital for "maybe three to four days" before transferring to a rehabilitation hospital for an extended period of time, and then another "four to six weeks" before Sadie returned to spending "permanent nights" with Tonya.  In total, Rayma agreed that this period spanned "four to six months."

The trial court found that Tonya and Charles did not "voluntarily relinquish[] permanent care, control, and possession of [Sadie] when Tonya . . . suffered a seizure in 2020 and was hospitalized and in rehabilitation for several weeks thereafter."  But we have held that voluntary relinquishment is not necessary to establish standing under Section 102.003(a)(9). *See Jhaveri v. McBeth*, No. 03-14-00261-CV, 2015 WL 8591659, at *4 (Tex. App.—Austin

Dec. 10, 2015, pet. denied) (mem. op.) ("We have found no case law that expressly construes section 102.003(a)(9) to include a requirement of parental consent to acquire standing through possession."); *In re E.N.C.*, No. 03-07-00099-CV, 2009 WL 638188, at *4 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op.) ("[T]he legislature also likely chose to not require consent . . . to not foreclose suits filed by individuals who have been caring for children under circumstances in which obtaining the consent of one or both parents is not feasible or warranted, such as when one or both parents have . . . become ill . . . ."). And, in any event, the evidence was undisputed that Charles was aware that Sadie was living with and being cared for by the Benedicts during this time and did not seek to modify that arrangement. *Cf. Jasek v. Texas Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 536 (Tex. App.—Austin 2011, no pet.) ("[S]ection 102.003(a)(9) does not violate a parent's right to make decisions regarding their children; rather, it imposes potential legal consequences for certain types of parental decisions."). There is also no requirement that the parents intended to make the nonparents' periods of possession permanent. *In re H.S.*, 550 S.W.3d at 160 ("The statute requires six months of actual care, control, and possession, not six months of care, control, and possession *with the understanding that it is intended to be a permanent arrangement*."). Thus, the undisputed evidence indicated that Sadie resided on a full-time basis with the Benedicts for about four months in 2020 and for a little over two months from November 2021 until they filed suit in January 2022.

Given that the undisputed evidence indicates that Sadie lived with the Benedicts for a total period of six months between early 2020 and January 2022, we conclude that the Benedicts have shown that they shared a principal residence with Sadie for the statutorily required amount of time. Although there was a substantial break between the Benedicts' care and custody of Sadie in 2020 and in 2021, the six-month time period is not required to "be

continuous and uninterrupted." *See* Tex. Fam. Code § 102.003(b). "[E]vidence of a break between periods of possession does not defeat standing; instead, a substantial break is more probative as to the best-interest-of-the-child inquiry." *In re B.A.G.*, No. 11-11-00354-CV, 2013 WL 364240, at *9 (Tex. App.—Eastland Jan. 31, 2013, no pet.) (mem. op.).

Tonya argues that "[t]he six-month period[] . . . must *__immediately__* precede the filing of the petition," that separate periods of time may not be added together, and cites *Jones v. Fowler* as support. 969 S.W.2d 429 (Tex. 1998). In *Jones*, the Texas Supreme Court held that the legislature's deletion of the phrase "immediately" from Section 102.003(a)(9) was not intended to be a substantive change. *Id.* at 433. But at the time *Jones* was decided, the language in Section 102.003(b) providing that "[i]n computing the time necessary for standing under Subsections (a)(9) and (11), the court may not require that the time be continuous and uninterrupted" did not yet exist. That language was added to the statute a year later. Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 2, sec. 102.003, 1999 Tex. Gen. Laws 4696 (amended 2001). Additionally, the language requiring that the termination of actual care, control, and possession occur not later than ninety days before filing, rather than immediately before, was also added by that same amendment. *See id.*

Based on these changes to the statute, courts have routinely held that a six-month period of actual possession, custody, and control need not be continuous, and instead may be interrupted by a substantial period of time. *See In re Guardianship of C.E.M.-K.*, 341 S.W.3d 68, 77–78 (Tex. App.—San Antonio 2011, pet. denied) (adding two separate periods of time in computing six-month period of possession); *Doncer v. Dickerson*, 81 S.W.3d 349, 362 (Tex. App.—El Paso 2002, no pet.) (same); *In re M.B.*, No. 05-19-00971-CV, No. 05-19-00973-CV, 2019 WL 4509224, at *3 (Tex. App.—Dallas Sep. 19, 2019, no pet.) (mem. op.) (period of

11

possession interrupted by five months was sufficient for standing purposes because sum of first and second periods reached statutory requirement). Accordingly, we conclude that the Benedicts met this first element of Section 102.003(a)(9).

However, beyond just sharing a residence, the Benedicts were also required to show that they exercised "actual care, control, and possession of the child" during that same period of time. *See* Tex. Fam. Code § 102.003(a)(9). The supreme court has provided some parameters on what is required to meet this burden:

> [A] nonparent has 'actual care, control, and possession of the child' under section 102.003(a)(9) if, for the requisite six-month time period, the nonparent served in a parent-like role by (1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children.

*In re H.S.*, 550 S.W.3d at 160.

The trial court found that evidence of the Benedicts' purchasing items for Sadie, participating in her healthcare appointments, and dropping her off and picking her up from school was insufficient to establish that they "exercised actual parental care and control" over Sadie. As previously stated, we review the trial court's application of the law to the facts de novo. *See Perry*, 66 S.W.3d at 257. And, importantly, we have previously held that when determining whether standing exists under Section 102.003(a)(9), it is appropriate to consider whether the party claiming standing "(1) lived in the same home as the child or lived in a home where the child stayed overnight on a regular and frequent basis, (2) made financial contributions benefitting the child, (3) was involved with the child's education, and (4) was involved in matters involving the child's general upbringing, like health care, feeding, and clothing." *Jasek*,

348 S.W.3d at 534. The evidence that the trial court deemed insufficient directly relates to these factors.

In addition to the evidence deemed insufficient by the trial court, the undisputed evidence established that:

- The Benedicts home-schooled Sadie while she was in their care in 2020;

- Rayma "always" ensured that Sadie was fed and had clothing while in her care;

- The Benedicts make decisions about Sadie's electronics usage and what time she goes to bed and wakes up;

- The Benedicts have supported Sadie financially by paying for speech and equine therapy and doctors' appointments, providing her health insurance, and covering "the majority" of all Sadie's expenses;

- When Sadie was in fifth grade, she "had a fear of being safe at the school," and Rayma visited Sadie's school "twice" to visit with her counselor about this issue; and

- Charles believed that Sadie resided with both the Benedicts and Tonya for the entirety of 2021.

While it is true that Rayma testified that she shared many parental duties with Tonya, at the time the Benedicts filed suit, there was no requirement that the "actual care, control, and possession" be exclusive. *See In re H.S.*, 550 S.W.3d at 159 ("We decline to hold that a parent must wholly cease exercising his or her own parental rights and responsibilities in order for a nonparent to exercise those same kinds of responsibilities and obtain standing under section 102.003(a)(9)."). Based on the undisputed evidence, we conclude that Rayma established that she exercised "actual care, control, and possession" over Sadie for the requisite six-month period. *See id.* at 160. Thus, we further conclude that Rayma has standing to modify

13

the current custody orders.  *See* Tex. Fam. Code § 156.002(b) ("A person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction.").

However, the Benedicts presented very little evidence about the extent to which Steven cared for Sadie.  For instance, Rayma did not testify about how Steven helped care for Sadie's physical and psychological needs prior to filing suit or what his involvement was in caring for Sadie between November 2021 and January 2022.  *See In re H.S.*, 550 S.W.3d at 160. Based on this missing evidence, a rational factfinder could have found that Steven's exercise of actual care and control over Sadie did not last for at least six months ending not earlier than ninety days prior to January 22, 2022.  *See* Tex. Fam. Code § 102.003(a)(9); *Udall*, 730 S.W.3d at 725.  Accordingly, we cannot conclude that, as a matter of law, the trial court erred by concluding that Steven lacked standing under Section 102.003(a)(9).

We thus sustain the Benedicts' first issue in part, and we overrule it in part.[6]

## C.      Section 153.432 Affidavit

The trial court also found that the Benedicts lacked standing because they failed to file an affidavit asserting that Sadie's emotional or physical health or well-being would be significantly impaired by denying them access to her.  Section 153.432 requires that a grandparent who seeks possession of or access to their grandchild must execute and attach an affidavit to their petition describing how denial of possession of or access to the child by a

---

[6] The Benedicts acknowledge that Steven lacks standing under Section 102.004(a)(1), as he is not Sadie's biological relative.  *See* Tex. Fam. Code § 102.004(a)(1).  And because we have already concluded that Rayma has standing pursuant to Section 102.003(a)(9), we need not address whether she also has standing pursuant to Section 102.004(a)(1).  *See In re A.B.O.*, No. 06-14-00071-CV, 2015 WL 2236593, at *3 n.2 (Tex. App.—Texarkana May 12, 2015, no pet.) (mem. op.).

grandparent would significantly impair the child's physical health or emotional well-being. *See* Tex. Fam. Code § 153.432(c). However, "Section 153.432 applies to a grandparent's suit requesting possession of or access to a grandchild—not to a suit seeking a conservatorship." *In re Estep*, No. 13-23-00006-CV, 2023 WL 2207634, at *10 (Tex. App.—Corpus Christi–Edinburg Feb. 24, 2023, orig. proceeding) (mem. op.) (collecting cases holding same). Here, the Benedicts filed suit seeking conservatorship over Sadie, not merely possession of and access to her. Accordingly, we conclude that the failure to include an affidavit that complied with Section 153.432 did not warrant dismissal of the Benedicts' suit. *See id.*

Since the trial court's entry of judgment, the legislature enacted Section 102.0031, which includes substantially similar language to that found in Section 153.432 and applies to any suit brought by a nonparent. *See* Tex. Fam. Code § 102.0031(a); *In re S.N.*, --- S.W.3d ----, No. 02-25-525-CV, 2025 WL 3713587, at *3 (Tex. App.—Fort Worth Dec. 22, 2025, orig. proceeding) ("Section 102.0031 uses language nearly identical to Section 153.432's, with the only difference being that Section 102.0031 refers to 'the child's physical health or emotional development,' while Section 153.432 refers to 'the child's physical health or emotional well-being.'"). Tonya seems to suggest in her brief that the trial court's conclusion that dismissal was warranted under Section 153.432 also allows a conclusion that dismissal was appropriate under Section 102.0031. However, the legislature specified that Section 102.0031 applies only to cases "pending in a trial court on or after" September 1, 2025, and to cases filed after that date. *See* Act of May 15, 2025, 89th Leg., R.S., ch. 236, § 4, 2025 Tex. Sess. Law Serv. ----, ----. This case was not pending in the trial court on or after September 1, 2025, as the Benedicts filed their notice of appeal on May 9, 2024. *See In re T.L.S.*, No. 05-25-00658-CV, 2025 WL 3246206, at *10 n.3 (Tex. App.—Dallas Nov. 20, 2025, no pet.) (mem. op.) (applying

15

prior law because change in law applied only to cases "pending in a trial court" after effective date and "case was no longer pending in the trial court" because Mother filed notice of appeal). Accordingly, we cannot sustain the trial court's plea to the jurisdiction based on a change in the law that has not yet applied to this case. We express no opinion on whether dismissal may be appropriate on this basis on remand.

We conclude that, to the extent that the trial court dismissed Rayma's suit based on her failure to attach an affidavit that complied with Section 153.432 of the Family Code, it erred. We thus sustain Rayma's third issue.

### III. CONCLUSION[7]

We express no opinion on whether Rayma should be granted the relief she seeks. We conclude solely that she currently has standing to seek it. We affirm the portion of the trial court's final order that dismisses Steven's claims for lack of standing. However, we reverse the portion of the trial court's final order that dismisses Rayma's claims, and we remand this case for

---

[7] As an ancillary matter, in their respective briefing, the parties discuss a potential conflict of interest concerning the Benedicts' appellate counsel. According to both parties, the Benedicts' appellate counsel left one firm for another while continuing to represent the Benedicts. And, according to both parties, the new firm at which appellate counsel now works previously provided legal services to Tonya in the underlying case. In her brief, Tonya acknowledged that she had not yet filed a motion to disqualify. Since the filing of her brief, Tonya has not represented that a motion to disqualify has been filed in the trial court nor has she filed a motion to disqualify in this Court. This is also not a matter that inherently affects our subject-matter jurisdiction. *See In re Epic Holdings, Inc.*, 985 S.W.2d 41, 52 (Tex. 1998) (orig. proceeding) ("A party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint." (citation modified) (quoting *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (per curiam))). Both the Benedicts and Tonya either implicitly or explicitly acknowledge that this issue is not relevant to the merits of this appeal. Accordingly, we will leave in the trial judge's capable hands the decision of what, if anything, to do with this information.

further proceedings that are consistent with this opinion.[8]  We dismiss all pending motions as moot.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed in Part; Reversed and Remanded in Part

Filed:  July 10, 2026

---

[8] This opinion does not revive the temporary orders that were entered by the Bell County court and that awarded the Benedicts primary possession of Sadie, as those orders merged with the final judgment that we now reverse in part. *Cf. Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 637 (Tex. 2021) (interlocutory orders merge with final judgment).